1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    BRIAN SPEARS,                              No.  2:16-CV-2655-TLN-DMC-P

12                   Plaintiff,

13         v.                                    FINDINGS AND RECCOMMENDATIONS

14    EL DORADO COUNTY CPS, et al.,

15                   Defendants.

16

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court are Defendants Joan Barbie, El Dorado County, El

19    Dorado County Child Protective Services (CPS), and El Dorado County Public Guardian's

20    motion to dismiss, ECF No. 45, Plaintiff's opposition, ECF No. 47, and Defendants' reply, ECF

21    No. 48.

22            In considering a motion to dismiss, the Court must accept all allegations of

23    material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

24    Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

25    v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

26    738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

27    ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

28    395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

                                                1

1  factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

2  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

3  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

4         Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

5  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

6  notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,

7  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

8  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

9  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

10  allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The

11  complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id.  at

12  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

13  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

14  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

15  it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting

16  Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

17  defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

18  to relief." Id. (quoting Twombly, 550 U.S. at 557).

19         In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

20  outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

21  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

22  documents whose contents are alleged in or attached to the complaint and whose authenticity no

23  party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

24  and upon which the complaint necessarily relies, but which are not attached to the complaint, see

25  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

26  of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

27  1994).

28  / / /

1    Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

2    amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

3    curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

4

5                                    **I.  BACKGROUND**

6            The Court issued a Screening Order on November 5, 2019, finding Plaintiff had

7    stated cognizable claims against El Dorado County (including the El Dorado County Public

8    Guardian's Office and El Dorado County Child Protective Services) for violation of due process,

9    and against Joan Barbie for violation of Plaintiff's right to equal protection.  ECF No. 21.

10           The Court noted:

11           The second amended complaint appears to state a cognizable claim
             for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b).
12           Specifically, plaintiff has sufficiently articulated equal protection
             claims against the individual defendants based on alleged racial
13           animus.  Plaintiff has also sufficiently pleaded due process claims
             against the municipal defendants based on alleged implementation of
14           a policy not to provide prisoners notice of dependency proceedings.

15    Id. at 3.

16           Defendants filed a motion to dismiss the second amended complaint arguing

17    Plaintiff's claims were time-barred.  ECF No. 28.  Plaintiff filed an Opposition.  ECF No. 29.

18    Plaintiff then filed a motion for leave to amend his pleadings, which was procedurally defective.

19    ECF No. 31.  The Court issued Findings and Recommendations that the second amended

20    complaint be dismissed without leave to amend as the claims were time-barred.  ECF No. 32.

21    Plaintiff filed objections.  ECF No. 33.  The Court issued an Order vacating its Findings and

22    Recommendations and invited Plaintiff to file a procedurally sufficient motion for leave to

23    amend.  ECF No. 35.  Plaintiff did so, and Defendants did not oppose.  ECF Nos. 38, 40.  The

24    Court then issued an Order screening Plaintiff's third amended complaint and finding it sufficient

25    to proceed against Defendants.  ECF No. 41.  Defendants move to dismiss the third amended

26    complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 45.

27    / / /

28    / / /

1          In Plaintiff's third amended complaint Plaintiff named the following as

2    defendants:  (1) El Dorado County; (2) El Dorado County Child Protective Services (CPS); (3) El

3    Dorado County Public Guardian's; (4) Joan Barbie; and (5) Gary Slossberg.  ECF No. 39, pg. 3.

4    Process to serve Defendant Slossberg was returned unexecuted.  ECF No. 25.  The Court will

5    address the allegations as against the moving defendants.

6          1.      El Dorado County

7          Plaintiff alleged El Dorado County violated his Fifth and Fourteenth Amendment

8    due process rights and his Fourteenth Amendment equal protection rights by failing to notify him

9    of a hearing terminating his guardianship of his children, having a policy not to transport

10   prisoners to guardianship hearings, and failing to notify him of a dependency hearing. Plaintiff

11   further alleges El Dorado County violated his federal and state constitutional rights to access

12   courts through a series of policies that made it difficult to gain access to his family law matters.

13                              Due Process and Equal Protection

14         Plaintiff was arrested on April 12, 2012.  ECF No. 39, pg. 4.  At that time, Plaintiff

15   and Lauren Spears (Plaintiff's estranged wife) were guardians of their biological children, Brian

16   Jr. (17) and Robert (9), and two non-biological children, Daquan (10) and Verlis Smith (8).  Id. at

17   4, 8.  At some point soon after Plaintiff's arrest, Sheriff's deputies and Child Protective Services

18   took all four children into custody and dependency hearings were initiated for the minors.  Id. at

19   8.

20         A dependency hearing for Daquan and Verlis was held in July 2012.  Id. at 4.

21   Plaintiff was not notified of a hearing until after it had taken place.  Id.  Daquan and Verlis's

22   biological parents along with Plaintiff's estranged wife "were each assigned counsel as required

23   by law.  Plaintiff was the only parent who was not appointed counsel due to the policy and pattern

24   of El Dorado County . . . ."  Id.  After the hearing, Plaintiff received notice by mail that his

25   guardianship was potentially being terminated and a hearing had been scheduled for "the

26   following month to give plaintiff the opportunity to speak on his own behalf concerning the

27   issue."  Id.  Plaintiff filed a motion requesting transportation to the hearing and spoke with the

28   jail's transportation officer.  Id.  Plaintiff further alleges the following:

4

1

2    The transportation officer stated he would transport the plaintiff to
     the hearing.  The morning of the hearing plaintiff was called to the
3    transportation office and was informed by the officer that he was
     prepared to take plaintiff to the hearing but when he called over to
4    the court to let them know, the officer was given specific instructions
     by the court not to bring plaintiff to the hearing.  The transportation
5    officer also had received a fax of the denial of plaintiff's motion to
     be transported to the hearing, which he gave to plaintiff.  That denial
6    established the County's policy for not allowing inmates to attend
     guardianship hearings even when it involves termination of their
7    parental rights.   California law clearly states that guardianship
     parental rights are equivalent to biological parental rights.

8    Id. (errors in original).

9           After the hearing, Plaintiff received a report from CPS stating that "the hearing to

10   give plaintiff a chance to speak was held and that plaintiff's rights were terminated." Id. at 5.

11                                    Access to the Court

12          Plaintiff was involved in civil actions against his estranged wife involving his real

13   and personal property rights. Id. at 21.  "El Dorado County held hearings without [Plaintiff]

14   being present and dismissed [Plaintiff's] actions for failure to appear. . . ." Id. at 21-22.  More

15   specifically, Plaintiff alleges the following:

16          During plaintiff's sentencing of his criminal trial (held on February
            6, 2015) the judge recused himself from the separation hearing which
17          was scheduled in the same court following the sentencing by order
            of the sentencing judge, after postponing the separation hearing after
18          it had been bounced around to 5 different courts within 60 days
            without ever being heard.  During his recusal the judge ordered that
19          the plaintiff not be transported to prison until after the separation
            hearing.   That order was overridden by the county's policy of
20          transporting specifically selected prisoners to be transported as soon
            as possible after sentencing.  The plaintiff was sentenced on February
21          6, 2015 and transported on February 25, 2015 just a few days prior
            to the rescheduled separation hearing of March 5, 2015.  The hearing
22          was held without plaintiff and plaintiff's separation motions were
            denied due to plaintiff's failure to appear.  This not only violates state
23          and federal law which precludes the dismissal of a motion filed by a
            prisoner for failure to appear due to the fact inmates schedules are
24          not controlled by inmates, this ruling was also in contrast to
            numerous times the respondent (plaintiff's wife) failed to appear
25          even though noticed and who was not in custody.  In those situations
            the courts always rescheduled the hearings and re-noticed (even
26          though the courts had orginally [sic] given notice to the respondent
            by phone and service) the respondent.  Even though it was up to the
27          county to ensure plaintiff's apearance [sic] the hearings were not
            rescheduled, just dismissed.  Once plaintiff was sent to prison he was
28          never transported back for a hearing or allowed to appear by phone

                                           5

due to the county's policy of only accepting appearance by phone request via the internet (exception plaintiff had one appearance prior to the new policy). Due to those policies plaintiff was denied proper access to the courts. This was a civil matter that involved real and personal property rights but plaintiff's requests to obtain any form of access were denied due to the county's policy.

Prior to the county's new policy, plaintiff wrote the El Dorado County Courts again requesting what he needed to do to gain access to the County's courts (plaintiff had already filed a motion for access that was dismissed due to plaintiff not having access and failed to appear). Originally the County's policy was for an incarcerated party simply to send a written request, which plaintiff did on several occasions, these request were ignored. The above referenced letter was sent with a Request for Order (hearing), these were sent on 7-28-15. On 8-14-15 plaintiff received the stamped Request for Order with a court date of 9-3-15. On 9-1-15 plaintiff finally received a response to his request for information to obtain access to the El Dorado Couty [sic] Courts (2-days before the scheduled hearing). The letter referred plaintiff to CourtCall. CourtCall takes at least two weeks to get approval and verification numbers, so once again plaintiff was not allowed to attend and the Request was dismissed for plaintiff's failure to appear. During these months plaintiff worked with his state counselor who stated he never seen an inmate from any other county have such a hard time getting access to a county court.

After this even plaintiff did get another hearing date (10-29-15) in which he did use CourtCall and attended the hearing via CourtCall. After obtaining additional information from that hearing plaintiff sent another Request for a hearing and once he received the date he applied for access via CourtCall.   Just days before the hearing plaintiff received a letter form CourtCall stating that El Dorado County's policy had changed and they no longer accepted the services of CourtCall. This again lead to plaintiff not having access and having his motion dismissed for failure to appear thus again in violation of state and federal laws that state a court must reschedule a hearing when a prisoner fails to appear because he does not control his prison schedule. Plaintiff's daughter went online to research El Dorado County's policy for appearing by phone. Their new policy required internet access to sign up for appearances by phone. This is impossible for an inmate to do without outside help. Since plaintiff again had an upcoming date his daughter signed him up via El Dorado County's website and got the access information. This was worthless due to the fact the County nor the Courts notified the prison, and even though plaintiff had the access information the prison could not put him on the phone without the county or it's courts contacting the prison first, which did not happen. So plaintiff again missed the court date and the actioin [sic] was dismissed for "failure of the moving party to appear" again in violation of state and federal law regarding prisoner's appearances by phone.

Once again plaintiff wrote El Dorado County and explained his dilemma. The court wrote back stating that their current policy to gain access to their courts was via their website. The county and it's courts are well aware that inmates do not have access to the internet.

1
2
3
4

> The letter recommended that inmates contact a friend or family member to sign the inmate up.  This is not always possible for inmates and, even as plaintiff experienced, if an inmate is fortunate enought [sic] to get someone to sign them up the request must still be sent to the prison's llitigation [sic] department from the courts themselves, which El Dorado County's policy does not allow them to do.  So an inmate has no access to that county's courts period.

5
6
7
8
9
10
11
12

> As a last effort plaintiff sent a copy of the County's instructions for access to his prison's Litigation Department to see if they would verify the policy and help find a way to gain access to the El Dorado County Courts.  The Litigation Department responded with the fact they verified the policy with El Dorado County.  They further stated to have a friend or family member schedule the appearance but they would still need the El Dorado County Courts to serve them with an order to place plaintiff on the phone.  This is something that El Dorado County's new policy will not allow it's [sic] court to do.  El Dorado County's new policy has made it impossible for an incarcerated party to have access to their courts.  These dismissed hearings resulted in plaintiff losing his home along with other assets (totaling 1.4 million dollars) due to the fact he could not get the access to the court he needed to save them.

13   Id. at 15-17 (errors in original).

14         2.      El Dorado County Child Protective Services

15         Plaintiff alleges CPS violated his Fourteenth Amendment due process and equal

16   protection rights by failing to provide him notice of dependency hearings, failing to appoint

17   Plaintiff counsel, and terminating his parental rights.  Id. at 5.  Plaintiff also challenges various

18   decisions made by CPS related to contacting Plaintiff's children.  Id. at 12.

19         3.      El Dorado County Public Guardians Office

20         Plaintiff alleges the Public Guardians Office violated his Fourteenth Amendment

21   due process and equal protection rights by failing to give him notice of dependency hearings.

22         Plaintiff's oldest son, Brian Jr., is severely disabled.  Id. at 8.  When he reached the

23   age of majority, within a year of Plaintiff's arrest, Brian Jr.'s care was transferred to the El

24   Dorado County's Public Guardian's Office.  Id.  The Public Guardian's Office around July of

25   2012 proceeded to facilitate conservatorship hearings for Brian Jr. without any notice to Plaintiff

26   until November 2013 when Plaintiff finally received notice the hearings had occurred.  Id. at 9.

27   However, this notification of the hearing was given to Plaintiff after the hearing was already held.

28   Id. at 9.  Plaintiff claims the Public Guardian's Office had a policy not to notify inmates of

1    conservatorship hearings, and accordingly, he did not receive notice of the hearings.  Id.

2              4.      Joan Barbie

3              Plaintiff alleges CPS Officer Joan Barbie violated his equal protection rights under

4    the Fourteenth Amendment by intentionally manipulating reports, ignoring court orders, and

5    depriving him of fair access to the courts because of racial animus.

6              Defendant Joan Barbie was employed by El Dorado County CPS at the time of the

7    allegations giving rise to Plaintiff's third amended complaint, and was involved in the

8    dependency hearings for Robert Spears, which took place after Robert was removed from his

9    mother's care on July 23, 2012.  ECF No. 39, pg. 5.  Defendant Barbie's first report to the Court

10   stated the children were taken into the custody of CPS due to the acts of Lauren Spears, Plaintiff's

11   estranged wife, and a man by the name of Charles Flatherly.  Id.  However, at some point during

12   the series of hearings, Defendant Barbie met Plaintiff during a court appearance.  Id. at 6.  After

13   seeing that Plaintiff is black, she altered her report to insinuate Plaintiff was the reason the

14   children had been removed from their home.  Id.  Lauren Spears and Charles Flatherly are both

15   white.  Id. at 7.  These reports caused the judge to terminate Plaintiff's parental rights.  Id. at 6.

16   During the final hearing in December 2013, Plaintiff's attorney informed the judge Plaintiff was

17   not responsible for the children's removal, but the judge had already made up his mind.  Id.  The

18   judge informed Plaintiff he could file a motion regarding the decision.  Id.

19             Barbie also refused to pass along Plaintiff's letters to Robert and Brian Jr., despite

20   a court order to do so, between July 2012 and December 2013.  Id. at 6-7.  Plaintiff states the

21   following in regard to the letters:

22             During the early stages of the origianl [sic] dependency hearing for
             plaintiff's biological son Robert (which went form July 2012 until
23             December 2013) plaintiff continuously tried to obtain
             communication with his children.  Even though the orginal judge
24             ordered communication to start with letters, Ms. Barbie intentionally
             interfered with those communications.  The plaintiff wrote several
25             letters to both his sons.  It was Ms. Barbie's job to review the letters
             and to make sure they were given to the children when they were
26             determined appropriate.  Even though she did determine the letters
             appropriate she refused to given [sic] them to Robert.  Brian Jr was
27             no longer under her jurisdiction but she was ordered to give his letters
             to the Public Guardians Office so they could be forwarded to Brian
28             Jr.  That never happened.  After six months of writing letters plaintiff

8

1  discovered that his son Robert never received them.  The plaintiff
brought this to the judge's attention.  The judge asked Ms. Barbie
2  why she had not delivered them.  She stated it was an oversight.  She
was ordered to get them to Robert as soon as possible.  Ms. Barbie
3  stated she would be seeing Robert the following week and would
make sure he received them.  Again this never happened.  Months
4  went by before plaintiff found out that Ms. Barbie still had not given
the letters to Robert.
5

6  Id. at 6-7 (errors in original).

7  "During a recorded converstation [sic] with Lauren [Plaintiff's estranged wife],

8  Lauren stated that Ms. Barbie had told her that she did not like plaintiff and referred to him as a

9  'nigger'."  Id. at 7.  When a new case worker replaced Barbie, Plaintiff discovered the letters had

10  not been delivered.  Id. at 7.

11

12  **II.  DISCUSSION**

13  Defendants Joan Barbie, El Dorado County, El Dorado County CPS, and El

14  Dorado County Public Guardian argue that (1) the due process claim concerning the Daquan and

15  Verlis proceedings fails as a matter of law; (2) the due process claim concerning the Brian Jr.

16  proceedings is time-barred; (3) the equal protection claim against Defendant Barbie for

17  withholding Plaintiff's letters to his sons fails to plead facts to demonstrate racial animus; (4) the

18  equal protection claim against Defendant Barbie for manipulating reports is barred by the Rooker-

19  Feldman doctrine; and (5) Plaintiff's third amended complaint does not include a description of

20  Plaintiff's requested relief, thus it falls below the mandatory pleading standards.  ECF No. 45.

21  **A.  Due Process concerning Daquan and Verlis Proceedings**

22  The Due Process Clause protects prisoners from being deprived of life, liberty, or

23  property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Liberty

24  interests can arise both from the Constitution and from state law.  See Hewitt v. Helms, 459 U.S.

25  460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d

26  1401, 1405 (9th Cir. 1993).  "State law creates an interest protected by the Due Process Clause

27  only if the law contains '(1) substantive predicates governing official decision-making, and (2)

28  explicitly mandatory language specifying the outcome that must be reached if the substantive

9

1    predicates have been met." Huk v. Cty. of Santa Barbara, 650 Fed. Appx. 365, 367 (9th Cir.

2    2016) (quoting James v. Rowlands, 606 F.3d 646, 656 (9th Cir. 2010)).

3              "Parents have a constitutionally protected liberty interest in the care and custody of

4    their children." Clarke v. Upton, 2012 WL 4468415, at 9* (E.D. Cal. 2012) (citing Santosky v.

5    Kramer, 455 U.S. 745, 753 (1982)). A parent "may state a cause of action under § 1983 when she

6    alleges that the state terminated her parent-child relationship without due process of law."

7    Clarke, 2012 WL 4468415, at 9* (citing Smoot v. City of Placentia, 950 F. Supp. 282, 283 (C.D.

8    Cal. 1997)). Foster parents and guardians may also have a protected liberty interest in their

9    relationships with their wards. See Smith v. Org. of Foster Families for Equal. and Reform, 431

10   U.S. 816, 844 (1977).[1]

11             However, there are important distinctions between a parent-child relationship

12   bound by blood and a guardian-ward relationship formed by law. See id. at 845; see also Alber v.

13   Illinois Dept. of Mental Health and Dev. Disabilities, 786 F. Supp. 1340, 1368 (N.D. Ill. March 3,

14   1992). The natural parent-child relationship has "its origins entirely apart from the power of the

15   State." See id. Whereas a guardian-ward relationship or foster family has its source in state law

16   and contractual arrangements. See id.; see also Alber, 786 F. Supp. at 1368. Thus, courts should

17   look to state law "to ascertain . . . the expectations and entitlements of the parties." See id. at

18   845-846; see also Alber, 786 F. Supp. at 1368. "Where state law limits guardianship rights so

19   severely that it becomes unreasonable to equate a parent with a guardian, then a guardian may not

20   be able to claim a constitutional liberty interest in his or her relationship with the ward." Alber,

21   786 F. Supp. at 1368; see also Smith, 431 U.S. at 844. In contrast, "[w]here a state treats parent

22   and guardian as legal equals, then guardian and ward may claim constitutional rights of family

23   association." Id.; see also Smith, 431 U.S. at 844.

24             In addition, courts should consider factors such as when the relationship formed,

25   whether the ward knows his/her biological parents, and whether the relationship has been

26   continuous for several years. See Smith, 431 U.S. at 844. Courts should also consider whether

27

28   [1] The Supreme Court in Smith did not hold but suggested in dicta that foster parents could have a liberty interest in a
     foster child.

                                                        10

1    recognizing a constitutional right for a guardian or foster parent would "impinge on the rights of

2    an existing natural family." Alber, 786 F. Supp. at 1368; see also Smith, 431 U.S. at 844.  This

3    could arise where the natural parents give custody of a child to someone else with the

4    understanding that the child would be returned.  See Smith, 431 U.S. at 844.  The Supreme Court

5    stated in Smith, "Whatever liberty interest might otherwise exist in the foster family as an

6    institution, that interest must be substantially attenuated where the proposed removal from the

7    foster family is to return the child to his natural parents."  431 U.S. at 847.

8            Plaintiff alleges that he was a guardian of Daquan and Verlis Smith.  A guardian

9    has a right to notice and a hearing in a guardianship proceeding.  Prob. Code, § 1511; and West's

10   Ann. Welfare & Inst. Code, § 658.  Additionally, California law provides that when a guardian is

11   appointed "parental rights are completely suspended for the duration" of the guardianship.

12   Guardianship of Ann S., 202 P.3d 1089, 1098 (Cal. 2009); see also Fam. Code, § 7505, subd. (a)

13   (stating, "The authority of a parent ceases on . . . [t]he appointment, by a court, of a guardian of

14   the person of the child.").  "The guardian assumes the care, custody, and control of the child."  Id.

15   (citing Prob. Code, § 2351, subd. (a)).  While there is not a California case or statute that

16   explicitly states that a guardian is legally the same as a natural parent (or that a guardian is not

17   legally the same as a natural parent), it is apparent that California law recognizes guardians as

18   legal equals to natural parents with all of the same responsibilities and privileges.  See West's

19   Ann. Cal. Fam. Code § 3030.5(a) (stating, "Upon the motion of one or both parents, or the legal

20   guardian . . . .) (emphasis added); see also West's Ann. Cal. Fam. Code § 7503 (stating, "The

21   employer of a minor shall pay the earning of the minor to the minor until the parent or guardian

22   entitled to the earnings gives the employer notice that the parent or guardian claims the

23   earnings.") (emphasis added);

24           Plaintiff alleges that he never knew about a proceeding concerning Daquan and

25   Verlis and Plaintiff's custody over them until he received notice by mail that his guardianship was

26   potentially being terminated.  A hearing had been scheduled for "the following month to give

27   plaintiff the opportunity to speak on his own behalf concerning the issue." ECF No. 39, pg. 4.

28   Plaintiff filed a motion to be transferred to attend the hearing, but it was denied the morning of

                                        11

1    the hearing.  Plaintiff was then unable to attend.  After the hearing, Plaintiff received a report

2    from CPS stating that "the hearing to give plaintiff a chance to speak was held and that plaintiff's

3    rights were terminated."  Id. at 5.

4              Accepting Plaintiff's allegations as true, Plaintiff has stated a cognizable claim

5    against Defendants for a violation of his due process rights as to the proceedings concerning

6    Daquan and Verlis.  Under the facts alleged, Plaintiff had a due process right to notice and an

7    opportunity to be heard before his custody rights were terminated.  Defendants' argument that

8    Plaintiff's due process claim is "factually insufficien[t]" fails for the reasons above.

9                   **B.  Statute of Limitations concerning Brian Jr. Proceedings**

10             For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is

11   California's statute of limitations for personal injury actions.  See Wallace v. Kato, 549 U.S. 384,

12   387-88 (2007); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) ("[f]or actions under 42 U.S.C.

13   § 1983, courts apply the forum state's statute of limitations for personal injury actions."); Jackson

14   v. Barnes, 749 F.3d 755, 761 (9th Cir. 2014); Wilson v. Garcia, 471 U.S. 261, 280 (1985); Karim-

15   Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  In California, there is a

16   two-year statute of limitations for personal injury actions such as § 1983 cases.  See Cal. Civ.

17   Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004).

18             State tolling statutes also apply to § 1983 actions.  See Hardin v. Straub, 490 U.S.

19   536, 543-44 (1998).  California Civil Procedure Code § 352.1(a) provides tolling of the statute of

20   limitations for two years when the plaintiff is, at the time the cause of action accrued, an inmate

21   serving less than a life sentence.  See Cal. Code. Civ. P. 352.1(a).  This tolling provision applies

22   to all inmates except those sentenced to life without the possibility of parole.  See Brooks v.

23   Mercy Hospital, 204 Cal. Rptr.3d 289, 291-92 (Cal. App. 2016) (holding § 352.1(a) is applicable

24   to prisoners serving a sentence of life with the possibility of parole, but the statutory language

25   excludes those sentenced to life without the possibility of parole).  Thus, unless an inmate is

26   serving a sentence of life without the possibility of parole, a four-year limitation period applies.

27             Notwithstanding the application of the forum's state law regarding the statute of

28   limitations, including statutory and equitable tolling, in the context of a § 1983 action, it is

1    "federal law" which "governs when a claim accrues." <u>Fink v. Shedler</u>, 192 F.3d 911, 914 (9th

2    Cir. 1999) (citing <u>Elliott v. City of Union City</u>, 25 F.3d 800, 801-02 (9th Cir.1994)).  "A claim

3    accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of

4    action." <u>Id.</u> (citing <u>Kimes v. Stone</u>, 84 F.3d 1121, 1128 (9th Cir. 1996)); <u>see also</u> <u>TwoRivers v.</u>

5    <u>Lewis</u>, 174 F.3d 987, 991 (9th Cir. 1999).

6            Here, Plaintiff argues that his due process cause of action is not barred by the

7    statute of limitations because he included these allegations in a prior lawsuit and was directed by

8    the Court to split his allegations into two suits.  ECF No. 47, pg. 7.  He further alleges that he was

9    incarcerated when the claim accrued.  Defendants argue that "Plaintiff did not assert any claim

10   against the Public Guardian's Office" for not notifying inmates of guardianship hearings in his

11   original lawsuit.  ECF No. 45, pg. 8.  Defendants argue that the claim accrued in November 2013

12   (Plaintiff alleges being incarcerated at that time) and that Plaintiff filed an action with this

13   particular claim on November 8, 2016.  Defendants state that the claim is time-barred because it

14   was filed three years after the claim accrued.

15           However, even if Defendants are correct about when Plaintiff's claim accrued and

16   when Plaintiff filed this action, Plaintiff still would be within (what amounts to) the <u>four-year</u>

17   limitation period that applies to inmates.  Defendants failed to apply California Code of Civil

18   Procedure Rule 352.1(a), which tolls a claim for two years when, "at the time the cause of action

19   accrued," a person was "imprisoned on a criminal charge, or in execution under the sentence of a

20   criminal court for a term less than for life."  Therefore, Plaintiff's due process claim concerning

21   Bryan Jr. is not time-barred.

22                       **C.  Equal Protection and Racial Animus**

23           Equal protection claims arise when a charge is made that similarly situated

24   individuals are treated differently without a rational relationship to a legitimate state purpose.  <u>See</u>

25   <u>San Antonio School District v. Rodriguez</u>, 411 U.S. 1 (1972).  In order to state a § 1983 claim

26   based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff

27   must allege that "defendants acted with an intent or purpose to discriminate against the plaintiff

28   based upon membership in a protected class." <u>McGee v. California</u>, 2010 WL 5088240, at *3

13

1    (E.D. Cal. Dec. 7, 2010) (citations omitted).

2         Accepting Plaintiff's allegations as true, Plaintiff's equal protection claim is

3    cognizable.  Plaintiff demonstrates that Defendant Barbie discriminated against Plaintiff by

4    construing reports against him for being black and in favor of his white estranged wife.  Plaintiff

5    also alleges that he has a recorded conversation where Defendant Barbie expresses her dislike for

6    Plaintiff and refers to him by using the word "nigger."

7         Defendants argue that Plaintiff failed to demonstrate "his personal knowledge of

8    the slur or to otherwise show Barbie's alleged animus caused her to withhold the letters."  ECF

9    No. 45, pg. 10.  First, Plaintiff necessarily had personal knowledge of the slur in order to make

10   the allegation at issue. Second, it appears clear from the complaint that Plaintiff has alleged that

11   the animus caused Barbie to withhold the letters evidenced by, among other things, Plaintiff's

12   heading of the claim stating, "Joan Barbie intentionally . . . ignored court orders . . . due to racial

13   animus." Id. at 5.

14                              **D.  Rooker-Feldman Doctrine**

15        The Rooker-Feldman doctrine has narrow applicability.  See Exxon Mobil Corp. v.

16   Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  The doctrine prohibits federal district courts

17   from hearing cases "brought by state-court losers complaining of injuries caused by state-court

18   judgments rendered before the district court proceedings commenced and inviting district court

19   review and rejection of those judgments." Exxon Mobil Corp., 544 U.S. at 284.  "If a federal

20   plaintiff 'presents an independent claim,'" it is not an impediment to the exercise of federal

21   jurisdiction that the "same or a related question" was earlier aired between the parties in state

22   court.  Skinner v. Switzer, 562 U.S. 521, 532 (2011) (citations omitted).  "[A] state-court decision

23   is not reviewable by lower federal courts, but a statute or rule governing the decision may be

24   challenged in a federal action."  Id. (finding that Rooker-Feldman did not bar jurisdiction because

25   "Skinner does not challenge the adverse [state court] decisions themselves; instead, he targets as

26   unconstitutional the Texas statute they authoritatively construed.").  "Rooker-Feldman does not

27   bar suits that challenge actions or injuries underlying state court decisions—and especially those

28   that predate entry of a state court decision—rather than the decisions themselves."  Allen v.

1   DeBello, 861 F.3d 433, 438 (3d Cir. 2017).

2           The Court determines that Plaintiff's claim is not barred by the Rooker-Feldman

3   doctrine.  Plaintiff's equal protection claim is not seeking review of the state court proceeding but

4   challenging an underlying action.  Specifically, Plaintiff is challenging a report that was

5   manipulated by Defendant Barbie to harm Plaintiff because of his race.  Therefore, Plaintiff's

6   claim is not barred by Rooker-Feldman.

7

8                              **III.  CONCLUSION**

9           Because the Court finds that Plaintiff has stated cognizable claims, Plaintiff shall be

10  granted leave to amend to include a claim for relief in his complaint to cure his Rule 8 defect.

11          Based on the foregoing, the undersigned recommends that:

12          1.      Defendants' motion to dismiss be denied and

13          2.      Plaintiff be granted leave to file a fourth amended complaint to include a

14  claim for relief.

15          These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

17  after being served with these findings and recommendations, any party may file written objections

18  with the Court.  Responses to objections shall be filed within 14 days after service of objections.

19  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

20  Ylst, 951 F.2d 1153 (9th Cir. 1991).

21

22

23  Dated:  January 20, 2022

24                                    _____
                                      DENNIS M. COTA
25                                    UNITED STATES MAGISTRATE JUDGE

26

27

28